**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JONATHAN ARNOLD, | ) |
|         Plaintiff, | ) |
| v. | ) No. 09 C 7399 |
| LETICIA VILLARREAL, | ) |
|         Defendant. | ) |

**MEMORANDUM OPINION**

For the reasons explained below we abstain from exercising jurisdiction over this case pending the outcome of state court litigation in California. All pending motions are denied without prejudice to renew at a later date.

**BACKGROUND**

On November 21, 2004 plaintiff Jonathan Arnold and defendant Leticia Villarreal "participated in a wedding ceremony in California." (Compl. ¶ 29.) Arnold accuses Villarreal of deliberately failing to take the steps required by California law to create a valid marriage and of fraudulently inducing him to give her gifts by misrepresenting that they *were* married after the ceremony. (Compl. ¶¶ 34-40, 67, 83-84, 87, 89, 94.)[1] Villarreal has moved for summary judgment on the ground that the parties

---

[1] Arnold's six-count complaint requests legal and equitable relief pursuant to various provisions of the California Code.

actually were married, notwithstanding certain defects with the marriage license and the fact that the license was not "returned by the person solemnizing the marriage to the county recorder of the county in which the license was issued within 10 days after the ceremony." Cali. Fam. Code § 359(d)-(e). In our order denying Arnold's motion for a temporary restraining order we indicated that we were inclined to adopt Villarreal's position. (See Order dated Jan. 28, 2010 at 1 ("As far as we can tell, the marriage was valid, notwithstanding defendant's alleged failure to file the license, and therefore we do not see that plaintiff has a likelihood of proving that he gave the gifts in question to the defendant because of a false representation.").)

Prior to this litigation the parties separately filed petitions for dissolution in Illinois and California state courts. (Compl. ¶¶ 96-97.) Those petitions were dismissed based upon the parties' stipulation "that they were never legally married." See In re the Marriage of Leticia Villarreal and Jonathan Arnold, Case No. VF007381 (Cal. Sup. Ct. 2007) (Stipulation and Order on Order to Show Cause, attached as Group Ex. D to Pl.'s Resp. to Def.'s Mot. for Summ. J.); see also In re the Marriage of Jonathan Arnold and Leticia Villareal, Case No. 07D07042 (Ill. Cir. Ct. 2007) (Order dated Nov. 28, 2007, attached as Group Ex. D to Pl.'s Resp. to Def.'s Mot. for Summ. J.). As far as we can tell, the parties' stipulation would have been the final word on the matter if Arnold

had not filed this lawsuit. After Arnold filed his complaint in this case Villarreal petitioned the court in the California dissolution proceeding to vacate the parties' stipulation, arguing that the parties could not stipulate to a legal conclusion. The California court denied the petition in an order that addresses many of the issues that the parties have raised here. The court later denied Villarreal's motion to reconsider, and she is appealing the court's ruling. To this point we have attempted to coordinate proceedings in this case with the proceedings in California. We are now persuaded that this case should be stayed until the litigation in California is conclusively and finally resolved.

## **DISCUSSION**

Citing the domestic relations exception to federal jurisdiction, see Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992), we previously expressed doubts about our subject matter jurisdiction. (See Order dated Jan. 28, 2010 at 1 ("We are not prepared to rule at this time that the domestic relations exception to the diversity jurisdiction does not apply.").) We now conclude that we have jurisdiction.[2] The so-called "core" of the domestic

---

[2] In her answer to Arnold's complaint Villarreal denies that we have subject matter jurisdiction. (Answer ¶ 4.) By requesting summary judgment Villarreal effectively abandoned this contention. But that does not relieve our duty to determine whether this case is properly before us. See, e.g., Dexia Credit Local v. Rogan, 602 F.3d 879, 883 (7th Cir. 2010) ("[W]e have an independent duty to ensure subject-matter jurisdiction, and neither the parties nor their lawyers may waive arguments that the court lacks jurisdiction.") (internal citations omitted).

relations exception "is occupied by cases in which the plaintiff is seeking in federal district court under the diversity jurisdiction one or more of the distinctive forms of relief associated with the domestic relations jurisdiction: the granting of a divorce or an annulment, an award of child custody, a decree of alimony or child support." Friedlander v. Friedlander, 149 F.3d 739, 740 (7th Cir. 1998). "The peunumbra of the exception consists of ancillary proceedings, such as a suit for the collection of unpaid alimony, that state law would require be litigated as a tail to the original domestic relations proceeding." Id. This lawsuit is not within the exception's core, nor do we believe that it is "ancillary" to the original domestic-relations proceeding. The scope of such proceedings in California is limited by rule: "Neither party to the proceeding may assert against the other party or any other person any cause of action or claim for relief other than for the relief provided in these rules, Family Code sections 17400, 17402, and 17404, or other sections of the Family Code." Cal. R. of Court 5.104. We are not aware of any Family Code provision that would permit Arnold to pursue his claims as a "tail" to the dissolution proceeding, much less "require" him to do so. Friedlander, 149 F.3d at 740. Illinois courts construing Illinois' Marriage and Dissolution of Marriage Act take a similarly narrow view of the scope of dissolution proceedings. See, e.g., In re Marriage of

Foran, 587 N.E.2d 570, 571-72 (Ill. App. 1992) (tort claim not properly part of a dissolution proceeding).

Whether we *should* exercise jurisdiction in this case is a separate question. Federal courts may abstain from deciding cases involving domestic relations where the jurisdictional exception does not apply. See Ankenbrandt, 504 U.S. at 705-06; see also Friedlander, 149 F.3d at 741 (collecting cases). In Ankenbrandt the Court concluded that the exception did not apply to a lawsuit filed by a mother on behalf of her daughters seeking damages for their alleged sexual and physical abuse at the hands of their divorced father and his female companion. Id. at 691, 704. The Court then went on to discuss whether abstention was appropriate:

> It is not inconceivable, however, that in certain circumstances, the abstention principles developed in Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), might be relevant in a case involving elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody. This would be so when the case presents 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.' [Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 483 (1976).] Such might well be the case if a federal suit were filed prior to effectuation of a divorce, alimony, or child custody decree, and the suit depended on a determination of the status of the parties.

Id. at 705-706. The Ankenbrandt Court concluded that Burford abstention was inappropriate because "the status of the domestic relationship has been determined as a matter of state law, and in any event has no bearing on the underlying torts alleged." Id. at

706. Here, the parties' status is the subject of ongoing litigation in California. Prior to the California court's April 28, 2010 ruling the parties were deemed unmarried only by virtue of their stipulation — as far as we can tell neither the Illinois court nor the California court made any independent findings concerning the parties' status. It is unclear whether that stipulation, standing alone, would have foreclosed the marital-status question in this case. Numerous cases hold that parties cannot stipulate to a legal conclusion — in this case, whether the parties' marriage was legally valid under governing state law. See, e.g., Leonard v. City of Los Angeles, 31 Cal.App.3d 473, 476 (Cal. Ct. App. 1973) ("[I]t generally is held that a stipulation between the parties may not bind a court on questions of law, and this includes legal conclusions to be drawn from admitted or stipulated facts.") (collecting cases). Although we find it difficult to follow the California court's reasoning, the clear import of its ruling is that the parties' marriage was not valid. See In re the Marriage of Villarreal and Arnold, Case No. VF 007381, at 1-2, 7 (Cal. Sup. Ct. April 28, 2010) (hereinafter, "Cal. Op."). But the matter remains unsettled while Villarreal's appeal is pending. See, e.g., Minot v. Eckardt-Minot, 13 F.3d 590, 594 (2d Cir. 1994) (concluding that unresolved issues in state court litigation counseled abstention). And unlike the plaintiff's claims in Ankenbrandt, the parties' marital status is critical to

each of Arnold's claims.  If the parties were legally married, then Arnold's already tenuous claims collapse altogether.[3]

The other Burford abstention factors also favor abstention in this case.  The current summary judgment briefing deals with the parties' conflicting interpretations of California Family Code §§ 306 and 359.  Villarreal contends that she cannot be faulted for failing to send the marriage license to the county recorder because that is the responsibility of the person solemnizing the marriage.  Cal. Fam. Code § 359(e) ("The marriage license shall be returned by the person solemnizing the marriage to the county recorder of the county in which the license was issued within 10 days after the ceremony."); see also id. at § 306 ("Noncompliance with this part by a nonparty to the marriage does not invalidate the marriage.").[4]  Arnold insists that Villarreal is at fault because she took possession of the marriage license after the ceremony, thereby preventing the officiant from fulfilling his statutory duty.  (Compl. ¶¶ 34-36.)  The California court concluded that it was enough simply that the parties blamed each other to render the

---

[3]/  Arnold admitted in prior litigation that Villarreal told him in 2005 that she did not believe that they were married.  (We previously characterized Arnold's attempt to explain away that admission as "lame.")  It appears that Arnold gave to Villarreal most if not all of the gifts and benefits at issue here after that date.  (Compl. ¶¶ 63, 83.)  That Arnold may have filed this lawsuit to harass Villarreal is a possibility that we take very seriously.  See Fed. Rule Civ. P. 11(b); see also Friedlander, 149 F.3d at 741 (noting that harassment is "often an element of domestic relations litigation").

[4]/  The same analysis would apply to the signatures and other information missing from the marriage license itself.  Under § 359 the person solemnizing the marriage is required to complete the solemnization sections of the license and "cause to be entered" the name, signature, and address of at least one witness to the ceremony.  Cali. Fam. Code § 359(d).

"noncompliance" portion of § 306 inapplicable. Cal. Op. at 4.[5] It further concluded (apparently) that the problems with the marriage license — whether independently or in conjunction with the parties' stipulation is unclear — overcame the presumption that the ceremonial marriage was valid. Cali. Evid. Code § 663; see also DePasse v. Harris, 97 Cal.App.4th 92, 107 (Cal. App. 2002). These are difficult questions of state law concerning subjects — the necessary conditions of a valid marriage — that clearly implicate important state policies. See, e.g., In re Marriage of Fell, 55 Cal.App.4th 1058, 1061 (Cal. App. 2d Dist. 1997) ("Marriage is a matter of public concern. The public, through the state, has interest in both its formation and dissolution.") (citation and internal quotation marks omitted); In re Marriage of Walton, 28 Cal.App.3d 108, 112 (Cal. App. 4th Dist. 1972) (similar). And although California's Family Code does not create specialized tribunals to handle domestic relations disputes, see In re Chantal S., 913 P.2d 1075, 1078 (Cal. App. 1996), the expertise of California courts in these matters is plain. See Ankenbrandt, 504 U.S. at 704 (noting "the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of" divorce, alimony, and child custody decrees). This case "fits squarely" within the circumstances that

---

[5] Arnold blatantly mischaracterizes the California court's ruling when he says that the court found that Villarreal was at fault. (Pl.'s Resp. at 6, 10.)

the Ankenbrandt Court indicated would warrant abstention under Burford.  See Dunn v. Cometa, 238 F.3d 38, 42-43 (1st Cir. 2001).

In sum, it would be imprudent to forge ahead with this litigation before the parties' status is conclusively and finally established by a California court.  This matter is stayed generally until the litigation in California is final.  At that time, we will consider what further action is appropriate.

## CONCLUSION

This case is stayed pending the outcome of litigation in California state court.  Defendant's motion for summary judgment (20) and plaintiff's motion to strike and for sanctions (29) are denied without prejudice to renew at a later date.

DATE:     September 29, 2010

ENTER:    _____
          John F. Grady, United States District Judge

the Ankenbrandt Court indicated would warrant abstention under Burford.  See Dunn v. Cometa, 238 F.3d 38, 42-43 (1st Cir. 2001).

In sum, it would be imprudent to forge ahead with this litigation before the parties' status is conclusively and finally established by a California court.  This matter is stayed generally until the litigation in California is final.  At that time, we will consider what further action is appropriate.

## CONCLUSION

This case is stayed pending the outcome of litigation in California state court.  Defendant's motion for summary judgment (20) and plaintiff's motion to strike and for sanctions (29) are denied without prejudice to renew at a later date.

DATE:     September 29, 2010

ENTER:    _____
          John F. Grady, United States District Judge