**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JONATHAN ARNOLD, | ) |
|     Plaintiff, | ) ) ) |
|         v. | )    No. 09 C 7399 ) |
| LETICIA VILLARREAL, | ) ) |
|     Defendant. | ) |

**MEMORANDUM OPINION**

Before the court are: (1) defendant Leticia Villarreal's motion for summary judgment; (2) Villarreal's motion to strike plaintiff Jonathan Arnold's statement of additional facts; and (3) Arnold's motion for discovery pursuant to Fed. R. Civ. P. 56(f). For the reasons explained below, we grant Villarreal's motion for summary judgment; deny her motion to strike; and deny Arnold's motion for discovery.

**BACKGROUND**

Arnold, a Chicago resident, and Villarreal, a California resident, were engaged to be married in January 2004. (Def.'s Stmt. of Facts ("Def.'s Stmt.") ¶¶ 1, 9.) On October 1, 2004, they applied for and received a "Licence and Certificate of Marriage" in Los Angeles County, California. (Id. at ¶ 1.) The license portion of the document authorized the parties to participate in a marriage ceremony in California on or before December 30, 2004. (See

License & Cert. of Marriage, dated Oct. 1, 2004, attached as Ex. 2 to Def.'s Stmt.) The document also included a section entitled "Certification of Person Solemnizing Marriage" to be completed after the ceremony. (Id.) On November 21, 2004, Arnold and Villarreal participated in a marriage ceremony in Dana Point, California. (Def.'s Stmt. ¶ 11.) One of the two individuals who presided at the wedding, Father Erwin Castro, signed the certificate and filled out a portion of the form. (See License & Cert. of Marriage, dated Oct. 1, 2004.) But he did not fill out the date and location of the ceremony, nor did he obtain a witness's signature. (See id.); cf. Cal. Family Code § 359(d) ("The person solemnizing the marriage shall complete the solemnization sections on the marriage license, and shall cause to be entered on the marriage license the printed name, signature, and mailing address of at least one, and no more than two, witnesses to the marriage ceremony."). Under California law, it was Castro's duty to "return" the license and certificate to the recorder of the county that issued the license within 10 days after the ceremony. See Cal. Family Code § 359(e) ("The marriage license shall be returned by the person solemnizing the marriage to the county recorder of the county in which the license was issued within 10 days after the ceremony."); see also id. at § 359(f) ("As used in this division, 'returned' means presented to the appropriate person in person, or postmarked, before the expiration of the specified

time period."). Arnold contends that Villarreal "took" the marriage license from Castro. (See Def.'s Stmt. of Add'l Facts ¶ 4.)[1] In support of this statement, he cites the affidavit of a private investigator who interviewed Castro. (See Aff. of Mike McCormick, attached as Ex. C to Pl.'s Stmt. of Add'l Facts.) McCormick's affidavit states that Castro "gave" Villarreal the marriage license. (Id.) In any event, it is undisputed that Castro did not return the certificate to the county recorder as § 359 requires. Villarreal did not return the certificate, either. (Pl.'s Stmt. of Add'l Facts ¶ 4.)[2]

On or about December 27, 2004, Arnold and Villarreal received a letter from the Los Angeles County recorder. (Id. at ¶ 8.) The letter stated that no marriage certificate had been filed on their behalf, and reminded them that the license would expire on December 30, 2004. (See Recorder's Letter, dated Dec. 27, 2004, attached as Ex. 3 to Def.'s Stmt.) The letter advised the parties to take steps to resolve the issue:

> If you were married at least a week prior to the date on this notice, using the license referred to, you should immediately contact the person who performed the ceremony to be sure the Certificate was submitted to this office.

---

[1] Certain portions of Arnold's statement of additional facts are longer than the local rule contemplates. But Villarreal has not been prejudiced by the length of his responses. Indeed, Arnold's statement confirms that his lawsuit has no merit. So, we will deny Villarreal's motion to strike Arnold's Rule 56.1 statement of additional facts.

[2] Villarreal denies that she took the marriage license, but she has not cited any evidence supporting her denial. (See Def.'s Resp. to Pl.'s Stmt. of Add'l Facts ¶ 4.)

> The proper filling of the Certificate of Registry of Marriage is important to protect your marital and property rights.

(Id.) Arnold evidently did nothing in response to the letter. (See Pl.'s Stmt. of Add'l Facts ¶ 8 (stating that Arnold believed the letter was "simply a ministerial issue, irrelevant to the legal status of their marriage").) In mid-2005, Villarreal told Arnold that they were not legally married because the marriage license had not been filed. (See Pl.'s Stmt. of Add'l Facts ¶ 9.) According to Arnold, he dismissed her concern as "silly." (Id. ("Mr. Arnold believed that she misstated the fact of the matter because overstatements and misstatements were common during the period of Ms. Villarreal's pregnancy.").) But purportedly to appease her, he agreed to obtain a second marriage license on August 18, 2005. (Id. at ¶ 11 ("In that moment, this made Ms. Villarreal happy.").) The second license expired on November 15, 2005 and, like the first license, it was not completed and returned in the manner that § 359 requires. (See Def.'s Stmt. ¶ 15; Pl.'s Stmt. of Add'l Facts ¶ 11.)

The parties' relationship deteriorated and they each petitioned to dissolve their marriage in the summer of 2007. (See Def.'s Stmt. ¶ 22; Pl's Stmt. of Add'l Facts ¶ 14.) Arnold filed his petition in Illinois; Villarreal filed hers in California. Arnold has attached to his response brief a copy of Villarreal's motion in the California action for a ruling requiring the parties

to litigate their dispute in California, not Illinois. Villarreal stated in a declaration supporting the motion that she and Arnold were married on November 21, 2004 — the date of their marriage ceremony. (See Villarreal Decl. at 5.) But she did not make any representations about the marriage certificate itself. Shortly after filing her declaration in California, Villarreal moved to dismiss Arnold's Illinois petition on the grounds that the parties were not legally married because a marriage certificate had not been completed and returned. (See Mot. to Dismiss, attached as Ex. I to Pl.'s Stmt. of Add'l Facts, at 3-4.) The parties later stipulated that they were not married and dismissed their dissolution petitions in January 2008. (Id. at ¶ 25; see also Pl.'s Stmt. of Add'l Facts ¶ 16.)[3]

Arnold filed this action on November 25, 2009. The thrust of Arnold's various claims is that Villarreal misrepresented that the parties were legally married, and/or omitted to tell him that they were not. He seeks to recover the value of gifts that he gave Villarreal based upon his erroneous belief that their marriage was legally valid. Villarreal initially sought to defeat Arnold's claims by attempting to establish that their marriage *was* valid. To that end, she moved in the California court to vacate the parties' prior stipulation. We stayed this action pending a final

---

[3]  Pursuant to the parties' stipulation, the California court retained jurisdiction over the unresolved child-custody issue.

ruling on the validity of the parties' marriage. See Arnold v. Villarreal, No. 09 C 7399, 2010 WL 3893828, *4 (N.D. Ill. Sept. 29, 2010). The California court declined to vacate the parties' stipulation, and that decision became final after an appeals court dismissed Villarreal's appeal. We then lifted the stay in this case. (See Minute Entry, dated Oct. 23, 2013, Dkt. # 58.) But before the parties could begin discovery, Villarreal filed — through new counsel — the present motion for summary judgment.

## DISCUSSION

Arnold's amended complaint asserts claims under California law for: (1) fraudulent deceit (Count I); (2) actual fraud (Count II); (3) constructive fraud (Count III); (4) "equitable claim for return of gifts in contemplation of marriage" (Count IV); and (5) rescission (Count V). Villarreal has moved for summary judgment on all of Arnold's claims.

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "The court need consider only the cited materials, but it may consider other

materials in the record." Fed. R. Civ. P. 56(c)(3). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Mgmt. Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

**B. Arnold's Fraud Claims**

Arnold has filed fraud claims under three separate California statutes. See Cal. Civ. Code §§ 1709 (deceit), 1572 (actual fraud), and 1573 (constructive fraud). Villarreal argues that the undisputed facts show that: (1) Arnold did not justifiably rely on Villarreal's alleged misrepresentations and omissions; and (2) his fraud claims are time-barred.

**1. Justifiable Reliance**

Arnold must show that he justifiably relied on Villarreal's alleged deception to prevail on his fraud claims. See In re Facebook Privacy Litigation, 791 F.Supp.2d 705, 717 (N.D. Cal. 2011) (justifiable reliance is an element of a claim under Cal. Civ. Code §§ 1572 and 1573); ING Bank, FSB v. Chang Seob Ahn, 758 F.Supp.2d 936, 944 (N.D. Cal. 2010) (justifiable reliance is an

element of a claim under Cal. Civ. Code § 1709). Whether a plaintiff justifiably relied upon a defendant's alleged misstatements and/or omissions is ordinarily a question of fact. See Alliance Mortgage Co. v. Rothwell, 900 P.2d 601, 609 (Cal. 1995). But it "may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." See id. (citation and internal quotation marks omitted). Arnold knew within six weeks after the marriage ceremony that the marriage certificate had not been returned. So his claim, in essence, is that Villarreal misled him about the *legal consequences* of that omission by acting as though the parties were married. Villarreal is not a lawyer, and we have doubts about whether Arnold could have reasonably relied on her opinion even in the abstract. Miller v. Yokohama Tire Corp., 358 F.3d 616, 621 (9th Cir. 2004) ("Statements of domestic law are normally regarded as expressions of opinion which are generally not actionable in fraud even if they are false.").[4] But the actual facts of this case demonstrate that

---

[4] California law recognizes an exception to this rule when there is a confidential relationship between the parties. See Miller, 358 F.3d at 621; see also In re Marriage of Cairo, 204 Cal.App.3d 1255, 1261 (Cal. App. 1988) ("During marriage, there is a confidential relationship between husband and wife which imposes trust and confidence between them . . . ."). But it is difficult to see how that exception would apply in this case. Arnold and Villarreal participated in a religious wedding ceremony officiated by a priest and a rabbi. From a cultural perspective, the parties were "married" on that day. (See Pl.'s Stmt. of Add'l Facts ¶ 7(a) (Arnold and Villarreal "participated in a wedding ceremony, in which they exchanged vows, wedding rings and were pronounced married.").) So, the fact that Villarreal held herself out as Arnold's wife — by, for example, wearing her wedding ring (see Pl.'s Stmt. of Add'l Facts ¶ 8(i)) — is hardly evidence of deception with respect to the legal status of their marriage under California law. Arnold does not contend, for example, that Villarreal purported to read the statute and the relevant case law and deliberately misstated what it said. Indeed, she accurately stated the law; Arnold simply refused to believe her.

Arnold's purported reliance is preposterous. Arnold received a letter informing him that the marriage certificate had not been returned three days before the original marriage license was scheduled to expire. The letter urged Arnold to contact the person who performed the parties' ceremonial marriage "immediately" to resolve the issue. Arnold did nothing. Later, Villarreal — the very person he accuses of defrauding him — *told him* that the marriage was not valid because the certificate had not been returned. Arnold belittled her opinion, calling it "silly." But supposedly to appease her, Arnold agreed to obtain a second marriage certificate. Despite the prior warning from the Los Angeles County recorder, and Villarreal's statement that they were not legally married, Arnold allowed the second license to lapse without any further inquiry or action. Essentially, Arnold accuses Villarreal of defrauding him because she did not successfully persuade him that their marriage was legally invalid. And he was not persuaded, according to Arnold, because Villarreal was pregnant and emotional. (See Pl.'s Stmt. of Add'l Facts ¶ 9.) No amount of discovery would remedy the flaws in Arnold's frivolous theory. Villarreal is entitled to summary judgment on Arnold's claims for fraudulent deceit (Count I), actual fraud (Count II), and constructive fraud (Count III).

   2.  **Statute of Limitations**

Villarreal is also entitled to summary judgment on Arnold's fraud claims because they are time-barred. Under California law,

fraud claims are governed by a three-year statute of limitations. See Cal. Code Civ. P. § 338(d). The limitations period begins to run "after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." Cleveland v. Internet Specialties West, Inc., 171 Cal.App.4th 24, 31 (Cal. App. 2009) (citation and internal quotation marks omitted). This is ordinarily a question of fact. Id. But it may be determined as a matter of law if the only reasonable inference from the undisputed facts is that the plaintiff should have discovered the alleged fraud more than three years before filing suit. Id. Arnold learned in December 2004 that the marriage certificate had not been returned, and he was told that he should "immediately contact the person who performed the ceremony to be sure the Certificate was submitted to this office." (Recorder's Letter, dated Dec. 27, 2004.) In August 2005, Villarreal explained to Arnold that their marriage was legally invalid because the marriage certificate had not been returned. (See Pl.'s Stmt. of Add'l Facts ¶ 9.) Arnold argues that the statute of limitations did not commence because he did not believe Villarreal. (See supra.) But his subjective beliefs are irrelevant. By August 2005 at the latest, a reasonably prudent person would have had reason to doubt that the parties were legally married. Arnold did not file this lawsuit until November 25, 2009, outside the limitations period.

**C. Equitable Claim for Return of Gifts Made in Contemplation of Marriage**

Arnold has also asserted a claim for relief under Cal. Civ. Code § 1590:

> Where either party to a contemplated marriage in this State makes a gift of money or property to the other on the basis or assumption that the marriage will take place, in the event that the donee refuses to enter into the marriage as contemplated or that it is given up by mutual consent, the donor may recover such gift or such part of its value as may, under all of the circumstances of the case, be found by a court or jury to be just.

Cal. Civ. Code § 1590. There is very little case law construing this provision. However, it is apparent on the face of the statute that the donor is entitled to recover the gift (or its value) only if the donee "refuse[s] to enter into the marriage." Id. The undisputed facts establish that Villarreal did not refuse to marry Arnold. The parties participated in a marriage ceremony, which was presumptively valid. See Cali. Evid. Code § 663. Arnold learned that the marriage certificate had not been returned in December 2004 and did nothing to resolve the issue. Villarreal told him again in August 2005 that the marriage was not valid because the certificate had not been returned. Arnold executed a second marriage certificate only because Villarreal urged him to do so, and again let the certificate lapse. The undisputed facts establish that Villarreal (as "donee") did not refuse to enter into the marriage. On the contrary, she participated in a ceremonial marriage, exchanged vows, and later attempted to remedy the legal

defect in the parties' marriage. Villarreal is entitled to summary judgment on Arnold's claim for relief under Cal. Civ. Code § 1590 (Count IV).

**D. Rescission**

Arnold has pled a claim for rescission in the alternative to his statutory claim for return of gifts. (See Am. Compl. ¶ 167.) This claim fails for the same reason that his fraud and return-of-gifts claims fail. If Arnold had taken steps to remedy the known defect in the parties' marriage, as Villarreal had urged him to do, the parties would have been legally married. His complete lack of diligence is inconsistent with the importance he purportedly placed on being legally married, only further underscoring what a cynical enterprise this lawsuit has been. There is no basis in equity to rescind gifts that Arnold gave to Villarreal. Villarreal is entitled to summary judgment on Count V.

**E. Arnold's Rule 56(f) Motion for Discovery**

Arnold has sought leave to conduct discovery in order to respond to Villarreal's motion. First, the discovery that Arnold proposes to take is absurdly broad. Among other things, Arnold claims that he must take the depositions of *at least* 26 individuals he identifies as "friends and family." (See Rule 56(f) Mot. ¶ at 5.) He has included in his summary judgment materials an affidavit from one such person, Lisa Bernstein. Among other irrelevant observations, Bernstein states:

> One frequent guest at my home used to work with Jonathan, [and] who did not particularly care for Leticia, would ask before coming on holidays "whether that wife of his," would be in attendance.

(Bernstein Aff. ¶ 12.)  The federal courts are not a proper venue for petty score-settling.  Second, and more importantly, none of the discovery that he proposes to conduct could possibly have any bearing on whether Arnold justifiably relied on Villarreal's purported misstatements and omissions.  Nor would it alter the fact that Villarreal did not refuse to enter into the marriage.  The facts establishing that Arnold's claims are meritless are undisputed.  Arnold's Rule 56(f) motion is denied.

### **CONCLUSION**

Villarreal's motion for summary judgment [65] is granted. Villarreal's motion to strike plaintiff's statement of additional facts [97] is denied.  Arnold's Rule 56(f) motion to conduct discovery [90] is denied.

DATE:          June 26, 2014

ENTER:          _____
                John F. Grady, United States District Judge