**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JONATHAN ARNOLD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 09 C 7399 |
| LETICIA VILLARREAL, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION**

On June 27, 2014, the court entered judgment against plaintiff Jonathan Arnold, and in favor of defendant Leticia Villarreal. Arnold has moved to vacate or amend the judgment. For the following reasons, the court denies his motion.

**BACKGROUND**

The court will assume that the reader is familiar with the court's memorandum opinion granting Villarreal's motion for summary judgment. See Arnold v. Villarreal, No. 09 C 7399, 2014 WL 2922810 (N.D. Ill. June 27, 2014).

**DISCUSSION**

Arnold has moved to vacate the court's judgment as void for lack of subject-matter jurisdiction. See Fed. R. Civ. P. 60(b)(4). In the alternative, he asks the court to reconsider its order granting Villarreal's summary-judgment motion. See Fed. R. Civ. P. 59(e).

**I. Legal Standard.**

The court must vacate a final judgment if it is "void." Fed. R. Civ. P. 60(b)(4). "'[A] judgment is void only if the court which rendered it lacked jurisdiction of the subject matter or of the parties, or if it acted in a manner inconsistent with due process of law.'" Simmons v. Yurkovich, 497 Fed. Appx. 664, 665 (7th Cir. 2013) (quoting O'Rourke Bros. Inc. v. Nesbitt Burns, Inc., 201 F.3d 948, 951 (7th Cir. 2000)). Rule 59(e) governs Arnold's claim that the court's judgment is erroneous. See Fed. R. Civ. P. 59(e); cf. O'Rourke, 201 F.3d at 951 ("A void judgment is not synonymous with an erroneous judgment. Even gross errors do not render a judgment void."). "To establish relief under Rule 59(e), a 'movant must demonstrate a manifest error of law or fact or present newly discovered evidence.'" Vesely v. Armslist LLC, — F.3d —, 2014 WL 3907114, *3 (7th Cir. 2014) (slip op.) (quoting Boyd v. Tornier, Inc., 656 F.3d 487, 492 (7th Cir. 2011)). A Rule 59(e) motion is not an appropriate vehicle to raise new arguments that the movant could have raised before judgment. See Miller v. Safeco Ins. Co. of America, 683 F.3d 805, 813 (7th Cir. 2012) (Rule 59(e) motions are "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier.") (citation and internal quotation marks omitted).

**II. Arnold's Rule 60(b)(4) Motion.**

Arnold argues that the court lacks subject-matter jurisdiction because he alleged in his complaint that he and Villarreal are *residents* — not citizens — of Illinois and California, respectively. (See Original Compl., Dkt. 1, ¶¶ 1-2; Am. Compl., Dkt. 75, ¶¶ 1-2).) "'[C]itizenship' for the purpose of 28 U.S.C. § 1332 depends on domicile rather than residence." Heinen v. Northrop Grumman Corp., 671 F.3d 669, 670 (7th Cir. 2012). In response to Arnold's motion to vacate, the court gave the parties leave to amend their pleadings to allege citizenship. See 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts.").[1] The parties' amended pleadings establish that Arnold is a citizen of Illinois, and Villarreal is a citizen of California. (See Am. to Compl., Dkt. 111, ¶¶ 1-2; Answer to Am. to Compl., Dkt. 116, ¶¶ 1-2.) The court has subject matter jurisdiction, and thus denies Arnold's Rule 60(b)(4) motion.

**III. Arnold's Rule 59(e) Motion.**

Arnold argues that the court: (1) misconstrued California Civil Code § 1590; and (2) improperly failed to construe the

---

[1]/ The parties agree that Arnold's claims satisfy 28 U.S.C. § 1332's amount-in-controversy requirement.

summary-judgment record in the light most favorable to him as the nonmoving party.

**A.    California Civil Code § 1590**

Arnold claims that he is entitled under California law to recover gifts that he gave to Villarreal "in contemplation of marriage:"

> Where either party to a contemplated marriage in this State makes a gift of money or property to the other on the basis or assumption that the marriage will take place, in the event that the donee refuses to enter into the marriage as contemplated or that it is given up by mutual consent, the donor may recover such gift or such part of its value as may, under all of the circumstances of the case, be found by a court or jury to be just.

California Civil Code § 1590.  In her motion for summary judgment, Villarreal argued that Arnold could not establish: (1) that she had "refuse[d] to enter into the marriage;" and/or (2) that the parties had "given up" the marriage "by mutual consent."  (See Mem. of Law in Supp. of Def.'s Mot. for Summ. J., Dkt. 67, at 12.)  Arnold responded that Villarreal had effectively refused to marry him, without addressing Villarreal's argument that the parties had not mutually agreed to abandon the marriage.  (See Pl.'s Resp. to Def.'s Mot. for Summ. J., Dkt. 88, at 15-16.)  The court ruled that Villarreal had not refused to marry Arnold:

> The undisputed facts establish that Villarreal did not refuse to marry Arnold.  The parties participated in a marriage ceremony, which was presumptively valid.  See Cali. Evid. Code § 663.  Arnold learned that the marriage certificate had not been returned in December 2004 and did nothing to resolve the issue.  Villarreal told him again in August 2005 that the marriage was not valid

>   because the certificate had not been returned.  Arnold executed a second marriage certificate only because Villarreal urged him to do so, and again let the certificate lapse.  The undisputed facts establish that Villarreal (as "donee") did not refuse to enter into the marriage.  On the contrary, she participated in a ceremonial marriage, exchanged vows, and later attempted to remedy the legal defect in the parties' marriage.

Arnold, 2014 WL 2922810, *4.  Arnold now argues that the parties abandoned their marriage by mutual consent when they stipulated in 2008 — more than three years after their marriage ceremony — that they were not legally married.  (See Mem. of Law in Supp. of Pl.'s Mot. to Vacate J. ("Arnold's Mem."), Dkt. 108, at 5-7.)  He could, and should, have raised this argument before the court entered judgment.  See Miller, 683 F.3d at 813.  The court thus denies Arnold's motion to amend the judgment insofar as it is based on his new theory that was available to him at the time the parties briefed the summary-judgment motion.  Id.

The court would not alter the judgment even if it reached the merits of Arnold's new argument.  As the court noted in its opinion granting Villarreal's summary-judgment motion, there are only a few California cases interpreting § 1590.  See Arnold, 2014 WL 2922810, *4.  Arnold has not cited, nor is the court aware of, any decision applying § 1590 to a case in which the parties participated in a ceremonial marriage ceremony, but failed to take steps necessary to make the marriage legally valid.  As a matter of first impression, the court predicts that the California Supreme Court would find that the parties did not give up their marriage by "mutual consent"

for purposes of § 1590. See Kairy v. SuperShuttle Intern., 660 F.3d 1146, 1150 (9th Cir. 2011) ("In a case requiring a federal court to apply California law, the court must apply the law as it believes the California Supreme Court would apply it.") (citation and internal quotation marks omitted). Section 1590 appears in the section of the California Civil Code governing contracts. It does not purport to adopt the California Family Code's procedural requirements for a legally valid marriage. See Cal. Fam. Code § 359 ("Marriage license; completion and return to county recorder"). Arnold and Villarreal exchanged marriage vows during a religious ceremony and lived as a married couple for three years. Under California law, their ceremonial marriage was presumptively valid. See Cali. Evid. Code § 663 ("A ceremonial marriage is presumed to be valid."). The parties entered into marriage "as contemplated" for the purpose of any gifts that Arnold gave to Villarreal before the parties stipulated that they were not legally married.

**B. Whether the Court Applied the Summary-Judgment Standard Correctly.**

Arnold argues that the court emphasized his admission that Villarreal told him in August 2005 that the parties were not legally married, while ignoring evidence that he reasonably disbelieved her. (See Arnold's Mem. at 7-14.) Contrary to Arnold's suggestion, the court did not base its decision on his admission alone:

> Arnold knew within six weeks after the marriage ceremony that the marriage certificate had not been returned. So his claim, in essence, is that Villarreal misled him about the *legal consequences* of that omission by acting as though the parties were married. Villarreal is not a lawyer, and we have doubts about whether Arnold could have reasonably relied on her opinion even in the abstract. Miller v. Yokohama Tire Corp., 358 F.3d 616, 621 (9th Cir. 2004) ("Statements of domestic law are normally regarded as expressions of opinion which are generally not actionable in fraud even if they are false."). But the actual facts of this case demonstrate that Arnold's purported reliance is preposterous. Arnold received a letter informing him that the marriage certificate had not been returned three days before the original marriage license was scheduled to expire. The letter urged Arnold to contact the person who performed the parties' ceremonial marriage "immediately" to resolve the issue. Arnold did nothing. Later, Villarreal — the very person he accuses of defrauding him — *told him* that the marriage was not valid because the certificate had not been returned. Arnold belittled her opinion, calling it "silly." But supposedly to appease her, Arnold agreed to obtain a second marriage certificate. Despite the prior warning from the Los Angeles County recorder, and Villarreal's statement that they were not legally married, Arnold allowed the second license to lapse without any further inquiry or action. Essentially, Arnold accuses Villarreal of defrauding him because she did not successfully persuade him that their marriage was legally invalid. And he was not persuaded, according to Arnold, because Villarreal was pregnant and emotional. (See Pl.'s Stmt. of Add'l Facts ¶ 9.) No amount of discovery would remedy the flaws in Arnold's frivolous theory.

Arnold, 2014 WL 2922810, *3 (footnote omitted). Arnold argues that the court failed to take into account evidence that the parties held themselves out as married, and that Villarreal took inconsistent positions during litigation about the legal status of their marriage. (See Arnold Mem. at 9-11.) Arnold contends that this evidence supports his argument that he reasonably believed

that the parties were legally married. (See id. at 9-10.) The common thread running through Arnold's brief is his apparent belief that *any doubt* about the legal status of the parties' marriage is material and defeats summary judgment on his fraud claims. The court stated in its prior opinion that, even in the abstract, it doubted that Arnold could maintain a claim against Villarreal for misrepresenting the legal status of the parties' marriage. Arnold, 2014 WL 2922810, *3, n.4. In fact, Villarreal *told* Arnold that she was concerned about the legal status of their marriage, and he simply refused to take her concerns seriously. The undisputed facts amply demonstrate that Arnold's claims are frivolous.

## CONCLUSION

The court denies Arnold's motion to vacate or modify the court's June 27, 2014 judgment [106].

DATE: September 9, 2014

ENTER: *Amy J. St. E*

Amy J. St. Eve, United States District Judge